Jesse Kodadek
WORDEN THANE P.C.
321 W. Broadway St., Ste. 300
Missoula, MT 59802
(406) 721-3400
jkodadek@wordenthane.com

   *Attorney for Plaintiffs*

UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DANIEL SILBERMANN and CHRISTY SILBERMANN, <br><br> *Plaintiffs*, <br><br> *v.* <br><br> RICHARD HERMANNS, HERMANNS FAMILY HOLDINGS CORPORATION, and JOHN DOES 1 THROUGH 20, <br><br> *Defendants.* <br><br> *** <br> RICHARD HERMANNS and HERMANNS FAMILY HOLDINGS CORPORATION, <br><br> *Counterclaim Plaintiffs,* <br><br> *v.* <br><br> DANIEL SILBERMANN and CHRISTY SILBERMANN, <br><br> *Counterclaim Defendants*. | **ANSWER AND COUNTERCLAIMS** |

# ANSWER

## General Allegations

1. Admit that the Silbermanns are residents of Texas.

2. Admit that Richard Hermanns is a resident of Florida. Admit that Hermanns Family Holdings Corporation is a Florida corporation, which has its nerve center in Florida. Deny that that any John Doe Defendants are agents or alter egos of Richard Hermanns or Hermanns Family Holdings Corporation.

3. Admit.

4. Admit.

5. Admit that the acts giving rise to this matter occurred in Lincoln County, but deny that the Defendants committed any "tortious actions."

6. This Court has jurisdiction over the parties under 28 U.S.C. § 1332(a) because the amount in controversy is over $75,000, and because it involves citizens of different states.

7. Admit that venue in Lincoln County is proper under Montana law, and therefore venue in the Missoula Division is proper under Local Rule 3.2(b)

## Common Facts

8. Admit that 1021 Swanson Road was sold by Silbermann to Hermanns, but deny that the Complaint states the correct closing date, and deny that the Addendum was proper.

9. Deny.

10. Deny. Part 4(e) of the Amendment specifically states that the tenants would have quiet enjoyment and be protected under the provisions of the Montana Landlord Tenant Act, and other portions of the Amendment note that certain areas controlled by the tenants were specifically excluded from access.

11. The Defendants lack information to admit or deny the allegations in this paragraph, and therefore deny.

12. Deny.

13. Deny.

14. Deny.

## Count I—Breach of Addendum

15. The Defendants incorporate their previous responses.

16. The Defendants admit that the Addendum was signed by all parties and purported to create specific obligations. The Defendants deny any other allegations in this paragraph.

17. Deny.

18. Deny.

19. Deny.

## Count II—Statutory Breach of Tenancy

20. The Defendants incorporate their previous responses.

21. Deny.

22. Deny.

23. Admit.

24. Deny.

25. Deny.

26. Deny.

## Count III—Conversion

27. The Defendants incorporate their previous responses.

28. Admit that Silbermanns were entitled to certain items of "personalty," but deny that all of the items claimed by Silbermanns were personalty, rather than fixtures, or the property of others.

29. Deny.

30. Deny.

31. Deny.

32. Deny.

33. Deny.

## Count IV—Declaratory Judgment

34. The Defendants incorporate their previous responses.

35. Admit.

36. Deny.

37. Deny.

38. Deny.

## Count V—Unjust Enrichment

39. The Defendants incorporate their previous responses.

40. Admit that the Buy-Sell combined with the Addendum purports to convey specific items of personal property. Deny the remaining allegations in this paragraph.

41. Deny.

42. Deny.

43. Deny.

44. Deny.

## Count VI—Attorney Fees & Costs

45. The Defendants incorporate their previous responses.

46. Deny.

47. Deny.

## Affirmative Defenses

1. The Plaintiffs' damages, if any, are the result of the Plaintiffs' own conduct, or the conduct of its agents.

2. The Plaintiffs' claims are premised on the Plaintiffs' own fraudulent conduct, or of fraud in the inducement of the Buy-Sell and/or the Addendum.

3. The Plaintiffs' claims for damages or conversion are barred or limited by the statute of frauds.

4. The Plaintiffs' damages are limited or barred by the doctrine of unclean hands.

5. The Plaintiffs have failed to mitigate their damages.

6. The Addendum is void due to the Plaintiffs' failure to pay consideration, and because it is the result of mutual mistake.

7. The Plaintiffs' claims are barred or limited because their own breach of the express terms of the contracts and of the implied covenant of good faith and fair dealing excused further performance on behalf of the Defendants.

8. The Plaintiffs' damages are the result of actions by third parties, of which the Defendants had no control.

9. The Plaintiffs' damages, if any, are the result of pre-existing or subsequent conditions unrelated to the Defendants' conduct.

10. The Plaintiffs' claims are limited or barred because the Defendants were subject to the Montana Landlord Tenant Act, existing lease agreements, and the supervision of a judge in ongoing eviction proceedings, and the Defendants could not authorize activities that would have otherwise have violated the rights of the tenants on the property.

## **COUNTERCLAIM**

### **Parties, Jurisdiction, and Venue**

1. Hermanns Family Holding Corporations restates and incorporates the allegations above, including the jurisdictional statements that the Silbermanns are residents of Texas, the named Defendants are residents and citizens of Florida, and that the amount in controversy exceeds $75,000.

2. The Court has diversity jurisdiction under 32 U.S.C. § 1332(a), venue in Lincoln County is proper under Montana law, and therefore venue in the Missoula Division is proper under Local Rule 3.2(b).

### Additional Facts

3. In 2021, Richard Hermanns became aware of the fact that the property at 1021 Swanson Lodge Road in Troy, Montana was for sale, for the listed price of $3,780,000. At the time, the property was owned by Daniel and Christy Silbermann. There were also associated sub-listings, which offered various pieces of the property at lesser prices.

4. The MLS listing for the entire Swanson Lodge property listed a number of features on the property, including among other things, a "hydro-electric system" and "solar systems with agreements to sell back excess energy."

5. The MLS listing further stated that the property could be used for "multi-family, self-sufficient compound, or commercial property—furnished—let your vision take hold on this offering!"

6. While the property was listed, Daniel Silbermann informed his real estate agents that upon receipt of a full-price offer, he would "leave behind" all of the equipment on the property, including trucks, trailers, two tractors and a full complement of implements, and an excavator. He represented that the value of those items was $200,000.

7. This information about the "turnkey" nature of the property, along with

detailed rental information, was communicated to Hermanns—including specific details in Daniel Silbermann's own words about the items in the preceding paragraph—when he was considering making an offer on the property, and when he requested additional information about rental values of the various residences on the property and the difference between the various listings for portions of the property.

8. Ultimately, after some negotiation, Hermanns, via the Hermanns Family Holdings Corporation (HFHC), made a full-price offer on the entire Swanson Lodge property on February 24, 2022. The basis for the full-price offer was Hermanns' reasonable belief that it would be a turnkey purchase that included substantial personal property.

9. The offer was accepted by the Silbermanns.

10. The closing date was set to be on or before April 22, 2022.

11. Because HFHC was aware and relying on the idea that the Silbermanns were selling a "turnkey" property that included a multitude of personal property items, the Buy-Sell Agreement did not include an expansive list of the personal property that HFHC reasonably expected would be included with the property.

12. Instead, the Buy-Sell contemplated that, prior to HFHC's inspection contingency release date, the Silbermanns would provide "either an inclusion

or exclusion list." HFHC included this provision because it understood that while the sale would include substantial amounts of personal property, that there would nevertheless be strictly personal items that would not reasonably be part of a "turnkey" property.

13. In mid-March of 2022, immediately before the inspection contingency date expired, the Silbermanns provided "Personal Property Lists" of items they intended to include with the sale, along with items they intended to remove from the property.

14. Notably, a significant amount of the "excluded personal property" on this list included items that the Silbermanns had specifically represented was part of a full-price sale, including farm equipment, tractors, various implements, and the like. The "excluded personal property" also included "antiques" and "art work" that were implicitly represented as part of the "turnkey" nature of the property.

15. Further, a number of items on the "excluded personal property" list were not personal property, and were instead fixtures, such as solar panels.

16. Upon receipt of this list, HFHC communicated to Silbermanns' agents that the list was unacceptable to HFHC.

17. Ultimately, on April 20, 2022—just two days before the scheduled closing date, the Silbermanns presented Hermanns with a document titled

"Amendment to Buy-Sell Agreement." The Amendment consists of 15 numbered paragraphs. Notably, the Amendment enumerates specific personal property included with the sale.

18. The Amendment then appears to state that all other personal property not listed, "or listed in Exhibit '1' attached" to the Amendment, is not included in the sale.

19. Upon information and belief, no "Exhibit 1" was ever provided to Hermanns or his agents.

20. The Amendment was presented to Hermanns as a take-it-or-leave-it option, with the leave-it option meaning that Hermanns would have to abandon his purchase of the Swanson Lodge property. But this would have caused grave problems for Hermanns, because among other things, his future caretaker had already sold his own home and moved to Montana to prepare to live full-time at the Swanson Lodge.

21. Further, the Amendment gave the Silbermanns a 60-day lease at the rate of $1/month to remain as tenants on the property for the "sole purpose" of addressing the remaining personal property. The Silbermanns never tendered this lease payment to HFHC.

22. At the time of the Amendment and the closing a few days later, there were multiple tenants on the property—tenants that the Silbermanns had entered

into rental contracts with.

23. The Amendment specifically contemplated that the Sellers "shall not interfere with other Tenants peaceful enjoyment of the rented properties."

24. Believing he had no other option than to sign the Amendment, Hermanns signed it under duress.

25. Following closing, Hermanns immediately began having issues with the Silbermanns.

26. First, apparently relying on the Amendment, Daniel Silbermann went on to the property and began removing numerous items that were not in the proposed exclusions and which are properly categorized as fixtures, including, but not limited to: solar panels that were permanently attached to the property, along with associated electrical infrastructure; portions of the advertised hydroelectric system that were permanently attached to the real property, including a pump; various fencing and gates; and felled timber, among other items.

27. In addition, there were leaks in the water system, a basement flood that was not fully disclosed, and, upon information and belief, undisclosed insurance claims. It is unknown if the proceeds from those claims were used to fix the problems upon which the claims were premised.

28. Further, since closing, Hermanns has come to learn that shortly after the

Silbermanns purchased the Swanson Lodge property in 2015 or 2016, that they sued the former owners.

29. In that lawsuit, the Silbermanns accused the previous owners of misrepresenting the status of the property. Namely, they accused the previous owners of misrepresenting the status of a net-metered micro-hydro water system, and alleged that it did not work properly.

30. The Silbermanns also accused the former owners of intentionally misrepresenting personal property that would be included with the sale, and of failing to disclose numerous structural defects and adverse conditions relating to the property, including severe water intrusion issues in the basement, an inoperable well and lack of potable water, and a damaged micro-hydro system.

31. Since purchasing the property, Hermanns has experienced many of the same issues, including major problems with the potable water supply, problems with the micro-hydro system and its purported net-metering capabilities, and he and his agents have learned of numerous structural defects that were apparently not properly disclosed and must be repaired, including a leaking roof, which has led to further damage.

32. The Silbermanns are guilty of actual malice, because the Silbermanns had knowledge of facts, or intentionally disregarded facts that created a high probability of harm, and deliberately proceeded to act in conscious or

intentional disregard or with indifference to that high probability of harm.

33. The Silbermanns are guilty of actual fraud, because they made representations with knowledge of those representations falsity, or they concealed material facts with the purpose of depriving HFHC and Hermanns of their legal rights, and otherwise caused injury.

## Count I—Fraud/Constructive Fraud

34. HFHC and Hermanns incorporates their previous allegations in this part.

35. The Defendants made numerous representations about the property, including that it would be "turnkey" and include substantial amounts of valuable personal property. The Defendants further represented that many aspects of the property, such as the potable water system and the micro-hydro system, were in good working order.

36. Those representations were false.

37. Those representations were material to Hermanns' decision to purchase the property.

38. The Silbermanns were aware of and had knowledge of the falsity of their representations, or were ignorant of the truth of those representations. This is especially apparent because the Silbermanns had recently gone through similar problems, where they alleged the previous seller of the same property had misrepresented material facts about the property to them.

39. The Silbermanns were aware, or should have been aware, that HFHC would

reasonably rely on their representations.

40. HFHC and Hermmans were unaware of the falsity of the Silbermanns' representations.

41. HFHC relied on the Silbermanns representations, and reasonably believed those representations were correct, and HFHC had a right to rely on those representations.

42. As a proximate and consequent result of its reliance on the Silbermanns' representations, HFHC and Hermanns suffered injuries and damages, to be determined at trial.

### Count II—Conversion

43. HFHC and Hermanns incorporate their previous allegations in this part.

44. After the sale closed and HFHC became the legal owner of the property and its fixtures and had the right of possession, the Silbermanns wrongfully removed items of property that they had no right to take.

45. As a result of the Silbermanns unauthorized acts of dominion over property owned by HFHC, the Silbermanns have converted HFHC's property and caused Hermanns and HFHC damages, in an amount to be determined at trial.

### Count III—Declaratory Judgment

46. HFHC and Hermanns incorporate their previous allegations in this part.

47. A dispute has arisen about the interpretation of the Amendment to the Buy-Sell.

48. The Amendment is so vague and internally inconsistent as to be unenforceable, because the parties could not have had adequate notice as to what property would and would not be conveyed.

49. The Amendment was drafted by the Silbermanns, and the ambiguities should be therefore construed against them.

50. The Amendment is missing the so-called Exhibit 1, which apparently does not exist. Hermanns and his agents have repeatedly requested a copy of this purported exhibit, along with a copy of the communication where it was sent to Hermanns, but neither the Silbermanns nor their agents have ever provided the exhibit.

51. HFHC and Hermanns are entitled to a declaratory judgment declaring the parties' rights and responsibilities under the Amendment, including reformation of the amendment because there was no meeting of the minds, or invalidation of the amendment because it lacked mutuality of obligation and consideration.

## Count IV—Breach of Contract

52. HFHC and Hermanns incorporate their previous allegations in this part.

53. To the extent the Amendment is a valid contract, it has a survivability provision, and therefore does not merge into the warranty deed.

54. To the extent the Amendment is a valid contract, the Silbermanns have breached the express terms of that contract and caused damages to HFHC and

Hermanns by removing items that were not on the exclusion list, including felled timber, items of personal property, and fixtures that could never be considered personal property, and by failing to pay rent.

55. As a result of the Silbermanns breaches, HFHC and Hermanns have been damaged in an amount to be determined at trial.

## Prayer for Relief

Based on the Complaint and the Counterclaims, HFHC and Hermanns respectfully request the following relief:

A. That judgment be entered against the Silbermanns' claims in their Complaint;

B. That judgment be entered in favor of HFHC and Hermanns for their counterclaims;

C. For compensatory and consequential damages;

D. For punitive damages;

E. For attorney fees as allowed by contract, law, or equity;

F. For any other just relief.

August 5, 2022.

WORDEN THANE P.C.
*Attorneys for Hermanns*

/s/ Jesse Kodadek
Jesse Kodadek

## Certificate of Service

I certify, that unless it is determined that the party below is a registered CM/ECF users and will automatically receive a copy, that the party below was served a copy of this document via U.S. Mail and email on the date this document was filed.

Clifton W. Hayden
Law Offices of Clifton W. Hayden
913 Wisconsin Avenue, Suite 101
Whitefish, MT 59937
clif@whitefishlaw.lawyer
*Attorney for Plaintiffs*

/s/ Jesse Kodadek