IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DANIEL SILBERMANN and CHRISTY SILBERMANN,<br><br>              Plaintiffs,<br><br>vs.<br><br>RICHARD HERMANNS, HERMANNS FAMILY HOLDINGS CORPORATION, NANETTE F. WISE, KATHLEEN R. DODD, NEW WEST INVESTEMENTS, LLC D/B/A KELLER WILLIAMS REALTY NORTHWEST MONTANA and DOES 1 through 20,<br><br>              Defendants. | CV 22-133-M-DLC-KLD<br><br><br>ORDER |
| RICHARD HERMANNS and HERMANNS FAMILY HOLDINGS CORPORATION,<br><br>              Counterclaim Plaintiffs,<br><br>vs.<br><br>DANIEL SILBERMANN and CHRISTY SILBERMANN,<br><br>              Counterclaim Defendants. | |

       This matter comes before the Court on a Motion for Partial Summary

Judgment filed by Defendants/Counterclaim Plaintiffs Richard Hermanns and

Hermanns Family Holdings Corporation ("Hermanns") (Doc. 34), a Motion for

Summary Judgment filed by Defendants Nanette F. Wise, Kathleen M. Dodd, and

New West Investments ("Realtors") (Doc. 37), and a Motion to Withdraw Exhibit

and Confess Hermanns' Motion for Partial Summary Judgment filed by Plaintiffs

Daniel and Christy Silbermann ("Silbermanns") (Doc. 64). For the reasons stated

below, Hermanns' and Realtors' Motions for Summary Judgment should be

granted, and Silbermanns' Motion to Withdraw Exhibit and Confess Hermanns'

Motion for Partial Summary Judgment should be granted in part and denied in part.

## I.      Background[1]

   This case arises out of a real estate dispute between Hermanns and

Silbermanns over a piece of real property located in Troy, Montana ("Property").

(Doc. 55, ¶ 1). The Property, known as Swanson Lodge, is located on

approximately 100 acres and includes a main lodge and several cabins. In April of

2021, Silbermanns and Realtors entered into a listing agreement ("April 2021

Listing Agreement") for the sale of the entire Property. (Doc. 60, ¶ 2). The April

2021 Listing Agreement provided, in relevant part: (1) the Property would be listed

for the sale price of $3,780,000; (2) the fixtures would remain and be transferred

with the Property; (3) Seller would provide a written inventory of personal

---

[1] The facts set forth below consist of those facts which are undisputed or have been deemed substantively undisputed by the Court. Other facts are set forth as necessary in the analysis.

2

property to be included with the sale; (4) Seller agrees to pay Realtors a commission equal to 6 percent of the sales price; (5) if Seller refuses to accept an offer which meets or exceeds the listing terms, Seller agrees to pay Realtors, immediately and in cash, a commission equal to 6 percent based on the list price; and (6) Seller's acceptance of an agreement to sell and purchase containing contingencies shall not entitle Realtors to a commission unless or until the contingencies have been waived, released, or satisfied, or unless the Seller breaches the agreement to sell and purchase. (Doc. 60, ¶ 4).

Realtors and Silbermanns extended the April 2021 Listing Agreement in its entirety to May 31, 2022. (Doc. 60, ¶ 8). The parties entered into a second Listing Agreement on June 2, 2021 ("June 2021 Listing Agreement"), in which Silbermanns separately listed approximately 60 acres of the Property, carved out of the 100 acres in the original listing. (Doc. 60, ¶ 5). Realtors scheduled a showing for March 4, 2022, with a cash buyer interested in purchasing the 60 acres under the June 2021 Listing Agreement. (Doc. 60, ¶ 14).

On November 15, 2021, Hermanns submitted their first offer to purchase the entire Property for $3,450,000. (Doc. 60, ¶ 9). Silbermanns counteroffered on November 17; that counteroffer expired on November 19, 2021. (Doc. 60, ¶ 10). On February 23, 2022, Hermanns submitted a second offer to purchase the Property for $3,600,000, set to expire on February 24, 2022, at 5:00 p.m.

("February 22 Buy Sell"). (Doc. 60, ¶ 16). The morning of February 24,

Silbermanns texted Realtors to discuss the February 22 Buy Sell and similar

listings in the area ("February 24 Text"). That message states, in relevant part:

> Well since Nov[ember], the property at Bull Lake I shared with
> you the other day came off the market in Dec[ember] and re-listed
> this month with a 30% increase. A counter to Mr[.] Hermanns
> would be then (according to updates on present market value)
> would be like 4.9m for everything as is with no contingency with
> 10% down or a higher offer for one of the partial he had us work
> on with Nan. Otherwise let's pull both listing[s] off until we [c]an
> regroup after the showing on 4Mar we promised.

(Doc. 39-9 at 2). Realtors did not immediately respond.

On February 24, at 1:57 p.m.—before the February 22 Buy Sell expired—

Realtor Dodd notified Silbermanns that they had received a full price offer from

Hermanns ("February 24 Buy Sell"). (Doc. 60, ¶ 19). The February 24 Buy Sell

provided that the Hermanns would purchase the entire Property for $3,780,000

cash and that Silbermanns would provide either an inclusion or exclusion list prior

to the contingency release date. (Doc. 59-2 at 75). On February 25, Realtor Dodd

inquired whether they should cancel the March 4, 2022, showing based on

Hermanns' offer; Silbermanns instructed Realtors not to do so. (Doc. 59-2 at 88).

Silbermanns then forwarded Realtors their previous conversations with Hermanns,

explaining "[i]f we decide to counter Mr[.] Hermann[s], here is a brief recap from

last November's back and forth []". (Doc. 59-2 at 90).

Realtors responded to Silbermanns the afternoon of February 25 ("February

25 Email"), stating, in part:

> As your fiduciary, we want to make sure you and Christy are
> aware, should the full price cash offer be rejected, even if a counter
> is made to the Buyer, the terms outlined in the listing agreement
> dated March 24, 2021, which was extended to expire May 31,
> 2022, with Keller Williams Realty Northwest Montana, will still
> obligate the payment immediately and in cash the commission of
> 6% in the amount of $226,800 based on the list price of
> $3,780,000. We have fulfilled our commitment outlined in the
> Listing Agreement by bringing a ready and willing buyer with an
> offer meeting the list price of $3,780,000 and the acceptable terms,
> one of which was cash.

(Doc. 59-2).

Silbermanns accepted Hermanns' full price offer on February 26, 2022.

(Doc. 39, ¶ 25). The transaction closed on April 22, 2022, transferring the real

property, improvements, and certain personal property specifically identified in a

written Addendum to the Real Estate Purchase Agreement ("Addendum") to

Hermanns. (Doc. 10, ¶¶ 1–3). The Addendum provided that all personal property

not specifically purchased remained the property of Silbermanns, including

"personalty" listed in "Exhibit 1"; Exhibit 1, however, was not attached to the

Addendum, and represents a major dispute in this case. (Docs. 36, ¶ 21; 36-1 at

30). The Addendum also contained a provision permitting Silbermanns to remain

as tenants on the Property for 60 days after closing. (Doc. 36-1 at 30).

After closing, Silbermanns made multiple trips from their home in Texas to

remove their personal property. (Doc. 36, ¶ 31). Silbermanns also removed

numerous fixtures, including two sets of solar panels and associated electrical infrastructure, three hydro generators, and pump and piping from an existing well. (Doc. 36, ¶¶ 50–57). In May of 2022, one of Silbermanns' holdover tenants, Bill Adams, refused Silbermanns access to the lodge. (Doc. 36, ¶ 35). At some point later that day, Silbermanns and Adams became involved in a physical altercation whereby Adams hit Daniel Silbermann and knocked him unconscious. (Doc. 36, ¶ 35). Daniel Silbermann testified that the incident with Adams "wasn't Hermanns fault at all" and noted that he had neither seen nor spoken to Hermanns until his deposition on January 12, 2024. (Doc. 36, ¶ 37). Silbermanns returned to the Property for a final time on June 20, 2022; however, law enforcement were called on a report that Silbermanns were "stealing" the gates. (Doc. 36, ¶ 40). Silbermanns do not know who called law enforcement, although both Hermanns and his caretaker deny having done so. (Doc. 36, ¶ 41). Law enforcement did not instruct Silbermanns to leave the property, but Silbermanns testified that they nonetheless felt threatened and left. (Doc. 36, ¶ 43).

On July 7, 2022, Silbermanns filed their First Amended Complaint ("FAC")—now the operative pleading—alleging contract, tort, and consumer fraud claims against Hermanns and Realtors (Doc. 15). Hermanns filed his Answer and Counterclaims on December 1, 2022 (Doc. 16). On February 8, 2024, Hermanns filed a Motion for Partial Summary Judgment (Doc. 34); Realtors subsequently

filed a Motion for Summary Judgment (Doc. 37) on February 8, 2024. Then, on March 19, 2024, Silbermanns moved to confess Hermanns' Motion for Partial Summary Judgment and to Withdraw the Exhibit represented as Exhibit 1 (Doc. 64).

## II.    Legal Standard

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Liberty Lobby*, 477 U.S. at 248.

In determining whether a genuine dispute of material fact exists, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby*, 477 U.S. at 255. But "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Furthermore, a "party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Yeager v. Bowlin*, 693

F.3d 1076, 1080 (9th Cir. 2012) (citing *Van Asdale v. Int'l Game Tech.*, 577 F.3d

989, 998 (9th Cir. 2009)). Disputes over irrelevant or unnecessary facts will not

preclude a party from satisfying Rule 56's standard. *T.W. Elec. Serv., Inc. v. Pac.*

*Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

A federal court sitting in diversity applies the substantive law of the forum

state. *Ticknor v. Choice Hotels Int'l Inc.*, 265 F.3d 931, 937 (9th Cir. 2001).

## III. Discussion

### A. Hermanns' Motion for Partial Summary Judgment

Silbermanns argue that Hermanns blocked their access to the Property,

thereby preventing their removal of the remaining personal property. (Doc. 15, ¶¶

9–14). As a result, Silbermanns allege the following claims against Hermanns: (1)

breach of addendum; (2) statutory breach of tenancy; (3) conversion; (4)

declaratory judgment as to Silbermanns' personal property; (5) unjust enrichment;

and (6) attorney fees and costs. (Doc. 15).

In response, Hermanns counterclaims Silbermanns for fraud, conversion,

breach of contract, and a declaratory judgment from this Court. (Doc. 16).

Hermanns argues that he is entitled to summary judgment on each of Silbermanns'

claims and on his claims for conversion and breach of contract. (Doc. 16).

Hermanns does not seek summary judgment on his claim for fraud nor on his

request for declaratory judgment. On March 19, 2024, Silbermanns moved to

confess Hermanns' Motion for Partial Summary Judgment (Doc. 64).

Although Silbermanns represented that Realtors objected to their confession of partial summary judgment, Realtors have not filed any opposition to the confession of judgment, nor have they articulated in any briefing why confession of partial summary judgment should not be entered. In his Motion for Partial Summary Judgment, Hermanns seeks not only partial summary judgment on his counterclaims, but summary judgment on Silbermanns' claims against him. Although it is unclear from Silbermanns' request to confess judgment whether they intend to drop their claims against Hermanns, the Court will presume they did not, and will analyze Hermanns' arguments for summary judgment on Silbermanns' claims.

###### i.   Silbermanns' Claims

###### a.  Breach of Addendum and Statutory Breach of Tenancy

Silbermanns first allege that Hermanns breached the Addendum by failing to provide "access and accommodations from which [Silbermanns could] conduct the removal of the personal property that Hermanns declined to purchase under the Addendum." (Doc. 15 at 4). Relatedly, Silbermanns additionally claim that Hermanns "never delivered possession" of Silbermanns' room and that Silbermanns were "wrongfully excluded from the property", in violation of the Addendum's lease provisions. (Doc. 15, ¶¶ 15–26).

Daniel Silbermann testified, however, that it was Adams—not Hermanns—who assaulted him and prevented his access to the lodge to gather his personal property. (Doc. 36, ¶ 35). Silbermanns similarly fail to provide any evidence that Hermanns prevented them from staying in the lodge; indeed, Daniel Silbermann testified that he initially did not stay at the lodge because he "didn't need it", and then ultimately decided against staying after the altercation with Adams. (Doc. 36-1 at 58, 74:15–75–17). Silbermanns' claims are thus not borne out by the record, and summary judgment on Silbermanns' claims for Breach of Addendum and Statutory Breach of Tenancy, as set forth in Counts I and II of the FAC, should be granted in favor of Hermanns.

### b. Conversion

Silbermanns next allege that Hermanns is liable for conversion because (1) "his caretaker purposely prevented" Silbermanns from "recovering their personal property", (2) Hermanns instructed Silbermanns' tenants "to refuse access to Silbermanns", and (3) Hermanns wrongfully "maintained his conversion of the Silbermanns' personal property by written notice of his error." (Doc. 15. ¶¶ 27–33).

Liability for conversion requires the "unauthorized exercise of exertion of dominion of control over" another's property. *Drescher v. Malee*, 519 P.3d 17, 21 (Mont. 2022). Silbermanns fail to establish a claim for conversion under any of

their arguments. First, as established above, Silbermanns testified that it was
Adams—not Hermanns, Hermanns' caretaker, or at the direction of Hermanns—
who prevented them from accessing the lodge. The record further establishes that
Hermanns repeatedly requested, through counsel, for Silbermanns to return to
Montana and retrieve their personal property; however, Silbermanns failed to do so
despite Hermanns' many requests. (*See* Docs. 36, ¶¶ 45–46; 36-1 at 58, 93:24–
94:3, 124–25). On July 14, 2022, Hermanns notified Silbermanns that if their
personal property was not removed, they would have it inventoried and stored in
accordance with Montana's Landlord Tenant Act, Montana Code Annotated § 70-
24-430. (Doc. 36-1 at 124–25). Silbermanns' inventoried property remains in
storage, available to them.

The undisputed facts therefore demonstrate that Hermanns have not
exercised unauthorized control over Silbermanns' personal property. Accordingly,
summary judgment on Silbermanns' claim for conversion, as set forth in Count III
of the FAC, should be granted in favor of Hermanns.

### c.  Unjust Enrichment

Unjust enrichment "is an obligation created by law in the absence of an
agreement between the parties." *Welu v. Twin Hearts Smiling Horses, Inc.*, 386
P.3d 937, 948 (Mont. 2016). "In other words, courts have applied the doctrine of
unjust enrichment when a contract in law is implied by the facts and circumstances

of the case, but no actual contract exists between the parties." *Welu*, 386 P.3d at 948. Here, because there is no dispute that a valid, enforceable contract exists between the parties, Silbermanns' claim for unjust enrichment necessarily fails. Accordingly, summary judgment on Silbermanns' claim for unjust enrichment, as set forth in Count V of the FAC, should be granted in favor of Hermanns.

### d. Declaratory Judgment

Finally, Silbermanns request a court order permitting them access to their remaining personal property. (Doc. 15, ¶¶ 35–37). Yet, as discussed above, Hermanns has repeatedly requested, through counsel, that Silbermanns return to Montana to collect their personal property; a Court decision ordering such action is therefore unnecessary.

### e. Attorney's Fees

Silbermanns seek reasonable attorney fees associated with the FAC. (Doc. 15, ¶¶ 46–47). Because Silbermanns do not prevail on any of their substantive claims, an award of attorney fees would be improper.

### ii.   Silbermanns' Confession to Partial Summary Judgment of Hermanns' Counterclaims

Silbermanns move to Withdraw Exhibit in Opposition to Hermanns' Motion for Partial Summary Judgment and Confess Hermanns' Motion for Summary Judgment (Doc. 64). This motion follows a series of concerns raised by counsel for Hermanns, Jesse Kodadek, regarding the veracity of Exhibit 1 and counsel for

12

Silbermanns, Clifton Hayden's, continued representation that Exhibit 1 had merged into the parties' final agreement and "clearly authorize[d] removal by Plaintiffs of the property" at the center of Hermanns' counterclaims. (*See* Doc. 52 at 4, 55, ¶¶ 31, 32). Most recently, on March 14, 2024, Kodadek filed a Declaration asserting that Exhibit 1 "is a fabricated exhibit that was created after the closing of the transaction []." (Doc. 61, ¶ 2). In that filing, Kodadek outlined his many attempts to verify Exhibit 1 with Clifton Hayden, local counsel for Silbermanns, during the course of this case.

On October 10, 2022, Kodadek first emailed Hayden requesting information as to the creation of Exhibit 1. (Doc. 61, ¶ 3). Hayden provided a PDF document in response, noting that Kodadek should "[p]lease see attached for Ex. 1 as offered to the amendment." (Doc. 61, ¶ 9). Kodadek asserts that the PDF's metadata indicated it had been "created" on Wednesday, May 11, 2022—almost one month after closing. (Doc. 61, ¶ 9). Over the next year and a half, Kodadek attempted on numerous occasions to acquire more information from Hayden. (*See* Doc. 61, ¶¶ 10–27).

After receiving no response from Hayden, Hermanns filed his Motion for Partial Summary Judgment on February 8, 2024 (Doc. 34). Hermanns' Statement of Undisputed Facts included a thorough discussion of the issues surrounding Exhibit 1. (*See* Doc. 36). On February 15, 2024, Brett Godfrey was admitted as *pro*

*hac vice* counsel for Silbermanns. Godfrey filed Silbermanns' Response to Hermanns' Motion for Partial Summary Judgment on March 1, 2024.[2] (Doc. 52). Silbermanns' brief relied heavily on Exhibit 1, and Exhibit 15 contained a copy of the PDF document Hayden had previously represented to be Exhibit 1. (*See* Exhibit 15 at Doc. 52-2; Doc. 61, ¶ 9). Kodadek subsequently emailed both Godfrey and Hayden regarding his continued attempts to verify Exhibit 1 and his concerns that it had been fabricated. (Doc. 61, ¶ 36). Godfrey provided no substantive response. (Doc. 61, ¶ 37).

Then, on March 19, 2024, Silbermanns filed a Motion to Withdraw Exhibit in Opposition to Hermanns' Motion for Partial Summary Judgment and Confession of Hermanns' Motion for Partial Summary Judgment ("Motion to Confess") (Doc. 64). In that filing, Godfrey stated that upon learning Exhibit 1 was "suspect", he requested information and original digital files from Hayden. (Doc. 64, ¶ 12). In an email dated March 4, 2024, Hayden purportedly confirmed that Exhibit 1 "was drafted post-closing in May." (Doc. 64, ¶ 12). Godfrey therefore concluded that "[h]aving investigated the origination of Exhibit 1, I now realize that as it pertains to Exhibit 15, I must withdraw the Silbermanns' foundational Exhibit Index and foundational Declaration of Brett Godfrey (Doc. 52-1), since I now know that

---

[2] The Court is aware of physical and mental health issues with local counsel, but admonishes Mr. Godfrey that he must at all times comply with the District of Montana Local Rules governing *pro hac vice* practice.

Exhibit 15 was not a true and correct copy of the agreement reached between the parties." (Doc. 64, ¶ 13). Silbermanns seek to withdraw Exhibit 1 from the record and to confess the relief requested by Hermanns' Motion for Partial Summary Judgment.

The Court agrees that justice would be served by a confession of Hermanns' counterclaims contained in his Motion for Partial Summary Judgment. With that being said, the Court is gravely concerned by the accusation that local counsel for Silbermanns has committed fraud upon this Court. Because Exhibit 1 is central to those concerns, striking Exhibit 1 from the record would be improper.

### B. Realtors' Motion for Summary Judgment

The Court turns now to Realtors' Motion for Summary Judgment on Silbermanns' eight claims against them: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) professional negligence; (4) negligence *per se*; (5) general negligence; (6) intentional and negligent misrepresentation; (7) actual fraud; and (8) breach of the Montana Unfair Trade Practices and Consumer Protection Act (Doc. 15). At the center of these allegations are two communications: first, Daniel Silbermann's February 23 Text Message discussing a counteroffer to Hermanns, and second, Realtors' February 25 Email regarding Silbermanns' commission obligations should they reject Hermanns' February 24 offer.

15

### i.   Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing

As noted, to prevail on a claim for breach of contract, a claimant must establish (1) the existence of a valid and enforceable contract, (2) breach of an express or implied duty or obligation under that contract, and (3) resulting contract damages. *Kostelecky*, 518 P.3d at 879–60. Relatedly, the implied covenant of good faith and fair dealing provides that "[t]he conduct required by the implied covenant of good faith and fair dealing is honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." Mont. Code Ann. § 28-1-211 (2023).

Silbermanns' claims for breach of contract and breach of the covenant of good faith and fair dealing arise from Realtors' alleged failure to communicate and to counter the February 24 Buy Sell. (Doc. 15, ¶¶ 70–75). Silbermanns contend that their February 23 Text instructed Realtors to counter Hermanns and to increase the purchase price by $1,200,000, but that Realtors refused. (Doc. 15, ¶ 70). However, a plain reading of the February 23 Text—which states, in relevant part, that "a counter" to Mr. Hermanns "would be like 4.9m for everything as is []"—demonstrates that no such instruction was ever made. (*See* Doc. 39-9 at 2). At most, the February 23 Text merely contemplates what a counteroffer to Hermanns might be. Silbermanns next allege that Realtors failed to discuss the February 24 Buy Sell despite "multiple attempts to speak with [Realtor] Dodd to no avail".

(Docs. 15, ¶¶ 70–74; 59 at 12–13, 15). During Daniel Silbermann's deposition, however, he conceded that he neither called nor emailed Realtors to discuss the February 24 Buy Sell. (Doc. 59-2 at 150, 205:1–21). Finally, it appears that Silbermanns allege Realtors breached both the April 2021 Listing Agreement and the June 2021 Listing Agreement; however, Silbermanns fail to expand upon any alleged breach of the June 2021 Listing Agreement, and Hermanns' offer to purchase the entire Property related only to the April 2021 Listing Agreement, as the June 2021 Listing Agreement pertained to a "carved out" parcel subsumed in the April 2021 Listing Agreement for the entire Property. (*See* Doc. 59 at 13, 15).

Silbermanns further fail to establish damages. *Kostelecky*, 518 P.3d at 879–80. Daniel Silbermann testified that he sought to recover $1,200,000, representing the difference between the Property's list price and the $4,900,000 Silbermanns contend they instructed Realtors to counter. (Doc. 59-2 at 150, 206:24–207:9). In response to whether he believed Hermanns would have accepted $4,900,000, Silbermanns responded "Maybe. It was COVID. Scary time." (Doc. 39-2 at 209:7–12). Such "[s]peculation is insufficient to prove damages to a reasonable degree of certainty." *Cut Bank School Dist. No. 15 v. Rummel*, 58 P.3d 159, 161 (Mont. 2022).

Finally, with respect to their claim for breach of the implied covenant of good faith and fair dealing, Silbermanns allege additional damages arising from the

Addendum and the inventory list. (Doc. 15, ¶ 80). Yet Silbermanns fail to argue these claims in their brief or to raise any supporting facts. In any case, as to the inventory negotiations, the April 2021 Listing Agreement clearly provides—and Daniel Silbermann concedes—that "Seller will provide inventory to be included with the sale of the property." (Doc. 59-2 at 15, 147, 195:7–10). Silbermanns cannot claim damages from Realtors for a contractual provision that clearly falls on them to perform.

Accordingly, summary judgment on Silbermanns' claims for breach of contract and breach of the implied covenant of good faith and fair dealing, as set forth in Counts VII and VII of the FAC, should be granted in favor of Realtors.

### ii.    Negligence *per se*, General Negligence, and Professional Negligence

As a threshold issue, Realtors argue that Silbermanns' common law tort claims are barred under the Montana Real Estate Licensing Act ("MRELA"), codified in Montana Code Annotated Section 37-51-313 (2023). (Doc. 38 at 11) (citing *Watterud v. Gilbraith*, 358 P.3d 891 (Mont. 2015)). Enacted in 1995, the MRELA governs the relationship between brokers and buyers or sellers and replaced common law duties with specific statutory duties. Mont. Code Ann. § 37-51-313; *Zuazua v. Tibbles*, 150 P.3d 361, 362 (Mont. 2006). The MRELA provides, in relevant part:

The provisions of this chapter and the duties described in this section

> govern the relationships between brokers or salespersons and buyers
> or sellers and are intended to replace the duties of agents as provided
> elsewhere in state law and replace the common law as applied to
> these relationships …. The duties of a broker or salesperson vary
> depending upon the relationship with a party to a real estate
> transaction and are as provided in this section.

Mont. Code Ann. § 37-51-313(1). Realtors contend that because the MRELA

replaced the common law duties owed by real estate professionals, Silbermanns'

claims for professional negligence and general negligence should be dismissed.

In *Watterud*, a home buyer sued her real estate agent for negligence after

discovering mold in her recently purchased home, arguing that her agent owed a

duty of care to discover and disclose material adverse effects. 358 P.3d at 892. The

buyer did not cite to nor plead any specific violation of the MRELA. The Montana

Supreme Court granted summary judgment in favor of the agent, reasoning the

MRELA did not include the duty to inspect and disclose material facts about a

property. *Watterud*, 358 P.3d at 892; *See also Wagner v. MSE Technology*

*Applications*, 383 P.3d 717 (Mont. 2016) (affirming summary judgment in favor of

defendant realtors on plaintiff's professional negligence claim, finding expert

testimony not required to explain application statutory duty set forth in Section 37-

51-313(3)). However, the court did not grant the agent's motion for summary

judgment because of the buyer's failure to specifically plead the MRELA; rather,

the court found summary judgment proper because the allegations were not

reflective of the duties set forth under the MRELA.

Realtors' argument here is therefore slightly misplaced. Although the MRELA does indeed codify and replace real estate professionals' common law duties, *Watterud* directs only that the grounds for a successful negligence claim must be articulated in the MRELA. The Court therefore agrees with Silbermanns that even where the MRELA is not specifically pled, "[n]othing in the *Watterud* decision undercuts the notion that where the standards codified in the MRELA have been breached, claims for professional negligence—and a host of other enumerated duties— [] may lie against the broker []". (Doc. 59 at 8). The question, therefore, is whether Realtors violated their duties as provided by the statute.

A claim for negligence requires (1) the existence of an applicable legal duty owed to the claimant; (2) breach of that duty; (3) causation; and (4) a showing that the breach caused claimant damages. *Dubiel v. Mont D.O.T.*, 272 P.3d 66, 69 (Mont. 2012). Negligence *per se* requires that a plaintiff prove that (1) the defendant violated a particular statute; (2) the statute was enacted to protect a specific class of persons; (3) the plaintiff is a member of that class; (4) the plaintiff's injury is of the sort the statute was enacted to prevent; and (5) the statute was intended to regulate members of the defendant's class. *Prindel v. Ravalli County*, 133 P.3d 165, 175 (Mont. 2006).

It appears that Silbermanns' allegations largely parallel the duties set forth in Subsections 37-51-313(2)(b), (d), and (e), although the Court has found it difficult

20

to piecemeal together Silbermanns' arguments. The relevant subsections provide that a seller agent is obligated to the seller to "obey promptly and efficiently all lawful instruction of seller", to "safeguard the seller's confidences", and to "exercise reasonable care, skill, and diligence in pursuing the seller's objectives and in complying with the terms established by the listing agreement." Mont. Code. Ann. § 37-51-313(2)(b), (d), and (e).

Silbermanns' first two arguments—that Realtors did not follow instructions to discontinue negotiations and neglected to communicate or advise—fail because the February 24 Text contained no such instruction and because the record demonstrates Silbermanns never requested further advisement, as discussed above. (Docs. 15, ¶¶ 84, 89, 93; 59, ¶ 14). Silbermanns further argue that Realtors failed to safeguard their confidences by disclosing their final bargaining position and concealing a conflict of interest; however, Silbermanns do not provide, nor is this Court aware of, any facts that support such an allegation. (Docs. 15, ¶ 88; 60, ¶ 22; 59 at 14).

Accordingly, summary judgment on Silbermanns' claims for professional negligence, negligence *per se*, and general negligence, as set forth in Counts IX–XI of the FAC, should be granted in favor of Realtors.

### iii.    Intentional and Negligent Misrepresentation, Actual Fraud

To survive a motion for summary judgment on a claim for fraud or negligent

21

misrepresentation, the claimant must establish that the representation was untrue when made. *May v. ERA Landmark Real Estate of Bozeman*, 15 P.3d 1179, 1182 (Mont. 2000); *Deichl v. Savage*, 216 P.3d 749 (Mont. 2009).

Silbermanns aver that Realtors' February 25 Email, which outlined Silbermanns' commission obligation, negligently or intentionally misrepresented that the February 24 Buy Sell represented a "valid full price offer requiring payment of their commissions in full [.]" (Doc. 15, ¶¶ 95, 108). This representation was false, Silbermanns contend, because (1) Hermanns did not make a full price offer, (2) Realtors' commission was not yet due, (3) Realtors failed to advise, discuss, and follow client directives, and (4) Realtors failed to disclose the 37 contingencies contained in the February 24 Buy Sell. (Docs. 15, ¶ 96; 60, ¶ 26).

These claims are not borne out by the record. First, Daniel Silbermann conceded that Hermanns' February 24, 2022, cash offer met the price and terms of the listing agreement; specifically (1) that an offer be either cash or conventional and (2) in the amount of $3,780,000. (Doc. 59-2 at 17, 147, 195:23–196:16). Where a Seller "refuses to accept an offer which meets or exceeds the listing terms," the April 2021 Listing Agreement provides that "Seller agrees to pay Broker, immediately and in cash, a commission equal to 6% based on the listed price." (Doc. 59-2 at 17). Realtors therefore truthfully and accurately represented that "*should* [Hermanns'] full price cash offer be rejected, even if a counter is

22

made to the Buyer," the April 2021 Listing Agreement "will still obligate the payment immediately and in cash the commission of 6%". (Doc. 59-2) (emphasis added). Silbermanns' arguments that Realtors failed to advise, discuss, and follow client directives fail for the reasons already stated.

Finally, the February 24 Buy Sell contained 36 inspection contingencies, including a home/property inspection, roof inspection, radon, easements, and mold, and an additional provision that Seller was to provide an inclusion or exclusion property list prior to the contingency release date. (*See* Doc. 59-2 at 77–79). Although Silbermanns make much of these contingencies, the Listing Agreement provides that:

> Seller's acceptance of an agreement to sell and purchase containing contingencies shall not entitle the Broker to a commission unless or until the contingencies have been waived, released or satisfied, or unless the Seller breaches the agreement to sell and purchase.

(Doc. 59-2 at 17). Contingencies are therefore implicated only after an agreement is made, which, of course, had not yet occurred when Realtors transmitted the February 25 Email. In any case, the MRELA provides that a seller agent is obligated "disclose all relevant and material information that concerns the real estate transaction and that is known to the seller agent and not known or discoverable by the seller." Mont. Code Ann. § 37-51-313(2)(c). Because the contingencies were clearly included in the terms of the February 24 Buy Sell, and

because Silbermanns corresponded with independent legal counsel about the Buy

Sell, the contingencies contained therein were reasonably discoverable. (Doc. 59-2

at 149, 201:1–8).

The undisputed facts thus demonstrate Silbermanns have failed to establish a

*prima facie* case of negligent misrepresentation or fraud because the

representations contained in the February 25 Email were neither false nor untrue

when made. *See WLW Realty Partners, LLC v. Continental Partners VIII, LLC*,

360 P.3d 1112, 1115 (Mont. 2015). Accordingly, summary judgment on

Silbermanns' claims for intentional and negligent representation, as set forth in

Counts XII and XIII of the FAC, should be granted in favor of Realtors.

### iv.   Montana's Unfair Trade Practices and Consumer Protection Act Claim

The Montana Consumer Protection Act ("MCPA") prohibits "unfair or

deceptive acts or practices in the conduct of any trade or commerce …." Mont.

Code Ann. § 30-14-103 (2023). "Trade" and "commerce" are defined as

> the advertising, offering for sale, sale, or distribution of any
> services, any property, tangible or intangible, real, personal, or
> mixed, or any other article, commodity, or thing of value,
> wherever located, and includes any trade or commerce directly
> or indirectly affecting the people of this state.

Mont. Code Ann. § 30-14-102(8).

An unfair act or practice is "one which offends established public policy and

which is either immoral, unethical, oppressive, unscrupulous or substantially

injurious to consumers." *WLW Realty Partners, LLC*, 360 P.3d at 1118. To

determine what constitutes an "unfair or deceptive act or practice", courts in

Montana refer to federal statute and precedent interpreting the Federal Trade

Commission Act. Mont. Code Ann § 30-14-104(1); *Rohrer v. Knudsen*, 203 P.3d

759, 763 (Mont. 2009). To establish a private claim under the MCPA, the moving

party must establish "(1) that the defendant use[d] or employ[ed] an unfair or

deceptive act or practice in the conduct of any trade or commerce; (2) in regard to

which the claimant was a 'consumer' as defined by [the MCPA], and (3) which

caused the claimant to suffer direct or indirect financial detriment or detrimental

financial impact." *Kostelecky*, 518 P.3d at 861 (citation omitted) (internal quotation

marks omitted). "Whether an alleged act is unfair or deceptive is a question of

law." *Carlile v. Harbour Homes, Inc.*, 194 P.3d 280, 289 (2008).

Here, Silbermanns argue that Realtors are liable for consumer fraud because

they misrepresented Hermanns' full price offer, misrepresented that they were

entitled to immediate payment of their commission, failed to disclose that

Hermanns' offer contained 37 contingencies, and for breach of the parties' listing

agreements. (Docs. 15, ¶ 122; 59 at 17). Realtors argue that Silbermanns' claims

are barred because allegations for professional negligence fall under the purview of

the MRELA and because breach of contract claims do not amount to consumer

fraud. (Doc. 38 at 22–28).

25

Realtors analogize this case to *Brookins v. Mote*, where the Montana Supreme Court considered whether a MCPA claim may proceed against a hospital for failure to properly vet a physician. 292 P.3d 247, 357–58 (Mont. 2012). The court held that because failure to vet implicated the "actual practice" of medicine, it could not proceed under the MCPA as "only those acts or practices in the conduct of the entrepreneurial, commercial, or business aspects of running a hospital are actionable []." *Brookins*, 292 P.3d at 360; *See also Short v. Demopolis*, 691 P.2d 163 (Wash. 1984) (applying the "entrepreneurial aspect rule" to consumer protection act claim against legal professional).

Silbermanns contend that the more appropriate case is *Young v. Era Advantage Realty*. 513 P.3d 505 (Mont. 2022). In *Young*, a home buyer sued a realty company for negligence, constructive fraud, and violations of the MCPA due to its alleged failure to disclose the home's zoning limitations and history of water damage. 513 P.3d 505. The buyer's MCPA and negligence claims pertained specifically to the agent's allegedly deceptive statement that "no water has ever entered into the basement" of the home. *Young*, 513 P.3d at 513. However, the buyer later testified she was unaware this statement had been made until after filing the lawsuit; therefore, the court held, the statement did not factor into her decision to purchase the property and could not have been the cause-in-fact of her damages. *Young*, 513 P.3d at 513–14. In so holding, the court noted that although "a claim

under the MCPA does not require proof of a legal duty or breach thereof [,] it does [] require 'proof that the alleged unfair or deceptive trade act or practice caused the complaining consumer to suffer an 'ascertainable' financial or property loss.'" *Young*, 513 P.3d at 513 (quoting *Anderson v. ReconTrust Co., N.A.*, 407 P.3d 692, 700 (Mont. 2017)).

Realtors first argue that Silbermanns' reliance on *Young* is misplaced because *Young* was decided before the 1999 amendment to the MRELA; however, Realtors appear to confuse *Young* with *May*, an earlier case against the same defendant. In any case, *Young* was decided in 2022—nearly two decades after the MRELA was enacted—and unlike *Brookins*, which concerned the medical field, *Young* spoke directly to the issue of a MCPA claim against a real estate professional. Moreover, *Brookins* does not stand for the proposition that professional conduct is wholly exempt from liability under the MCPA—rather, as Realtors themselves point out, it is the "the gravamen of the claim" that determines whether it is actionable under the MCPA. (Doc. 63 at 24) (citing *Brookins*, 292 P.3d at 359).

To prevail on a claim for consumer fraud, Silbermanns must establish that that Realtors (1) "use[d] or employ[ed]" a "an unfair or deceptive act" in trade or commerce that (2) caused Silbermanns to suffer a direct or indirect financial detriment. *Kostelecky*, 518 P.3d at 861. A deceptive act is one "that is likely to

27

mislead consumers." *Young*, 513 P.3d at 513 (citation omitted). "[F]alse representations as to the characteristics, use, [or] benefits of what is being sold" may constitute a deceptive act. *WLW Realty Partners, LLC*, 360 P.3d at 1118 (citation omitted).

As in *Young*, Silbermanns' MCPA claim pertains to Realtors' alleged failure to disclose the 37 contingencies contained in the February 24 Buy Sell, the failure of which, Silbermanns' argue, "prevented the offer from meeting or exceeding the listing terms." (Docs. 59 at 17; 59-3, ¶ 26). Yet as discussed throughout this Order, Hermanns' offer satisfied the only "listing terms" provided for by the April 2021 Listing Agreement: (1) that the offer be cash or conventional and (2) in the amount of $3,780,000. (*See* Doc. 59-2 at 15). Silbermanns' misinterpretation of the parties' contract fails to create a dispute of material fact as to the veracity of Realtors' statements.

Realtors next cite *Ryffel Family Partnership Ltd. v. Alpine Country Const., Inc.* for the proposition that Silbermanns cannot use the MCPA as a vehicle to allege breach of contract. 2011 WL 13043421 (Mont. 18th Dist. Ct. Mar. 18, 2011). In *Ryffel Family Partnership Ltd.*, the district court considered whether a claim under the MCPA requires more than a dispute over contract terms. 2011 WL 13043421, *4. Answering in the negative, the court relied on other jurisdictions in its conclusion that a claim "based solely on allegations that seek to enforce an

unfulfilled contractional promise" is insufficient under the MCPA. *Ryffel Family Partnership Ltd*., 2011 WL 13043421, *4. Realtors do not point to—nor is this Court aware of—any Montana Supreme Court decision speaking to whether a breach of contract claim is viable under the MCPA. In any case, the Court need not reach this issue because it has already determined that Silbermanns' breach of contract claim fails as a matter of law.

Accordingly, summary judgment should be granted in favor of Realtors as to Silbermanns' claim for violations of the MCPA, as set forth in Count XIV of the FAC.

### v.   Attorney's Fees

Realtors seek recovery of their reasonable attorney's fees and costs. (Doc. 23 at 27–28). The April 2021 Listing Agreement provides, in relevant part: "In case either party engages an attorney's service in regard to this Agreement, or in case of suit or action on this Agreement, the prevailing party shall recover collection costs, court costs, and reasonable attorney's fees. (Doc. 39-12). Silbermanns do not dispute this provision in the Listing Agreement. The Court therefore finds that Realtors, as the prevailing party, should be awarded their reasonable attorney's fees and costs associated with this action.

## IV.   Conclusion

Accordingly, for the reasons set forth above,

IT IS RECOMMENDED that Hermanns' Motion for Partial Summary Judgment (Doc. 34) be GRANTED. Hermanns' claims for declaratory judgment and fraud, and his requests for damages and attorney fees, should proceed to a bench trial, as requested in his counterclaim.

IT IS FURTHER RECOMMENDED that Silbermanns' Motion to Withdraw Exhibit in Opposition to Hermanns' Motion for Partial Summary Judgment and Confession of Hermanns' Motion for Partial Summary Judgment (Doc. 64) be GRANTED in part and DENIED in part. Silbermanns' Motion should be granted as to Silbermanns' liability for Hermanns' counterclaims, but Exhibit 1 should not be stricken from the record.

IT IS FURTHER RECOMMENDED that Realtors' Motion for Summary Judgment (Doc. 37) be GRANTED, and that Realtors be awarded reasonable attorney fees.

//

//

//

//

//

//

//

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 18th day of April, 2024.

Kathleen L. DeSoto
United States Magistrate Judge